UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                       Case No.: 8:24-cr-405-JSM-LSG

VIVINA MARY BARNWELL,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

An evidentiary hearing occurred under 18 U.S.C. § 4241 to determine whether the defendant Vivina Mary Barnwell is competent to proceed in this case. Doc. 8. Based on the evidence presented, I recommend finding that the defendant is able to understand the nature and consequences of the proceedings against her, is able assist properly in her defense, and is, therefore, competent to stand trial.

    **I.    BACKGROUND**

On September 5, 2024, a grand jury indicted the defendant on four counts of access device fraud in violation of 18 U.S.C. §§ 1029(a)(2) and (c)(1)(A)(i) and one count of aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1). Doc. 1. Specifically, counts one through four allege that the defendant knowingly and with intent to defraud used a debit card number issued in the name of P.C. and obtained something of aggregate value exceeding $1000. Count five alleges that that the defendant used the identity of P.C. without lawful authority.

1

On February 4, 2025, the United States filed a plea agreement, the Court scheduled a change of plea hearing for February 18, 2025. Docs. 27-28. Shortly before the hearing, the defendant was admitted to the hospital "due to possible indicators of a stroke." Docs. 29, 33. The defendant's attorney expressed concern that the defendant "will either be under the influence of her medication or in significant pain during the plea colloquy" and therefore either mentally or physically incapable of fully participating in the proceedings. Doc. 33 at 3-4. A month later, the defendant informed her attorney that she had "suffered a mini stroke" and had been hospitalized after a fall. Doc. 42. According to defense counsel, "[w]hen taking medication, the defendant reports that she has difficulty staying alert and cannot focus," which counsel believes "prevents her from engaging in a knowing and intelligent plea colloquy or actively participating in her own defense." Doc. 42 at 2. Defense counsel moved for a psychiatric exam, and a June 6, 2025, order denied without prejudice that request and directed the defendant to explain why her current treating providers cannot adjust her medication to ameliorate the effect on her physical and mental capacity. Docs. 49, 53.

Counsel moved again for a competency examination under 18 U.S.C. § 4241(b) and explained that neither he nor the defendant could obtain the requested information from the defendant's medical providers. Doc. 58. A hearing occurred on August 14, 2025, during which defense counsel explained that he has experienced difficulty communicating with the defendant. Specifically, in attempting to prepare her for a plea colloquy, counsel observed a lack of short-term memory, recall, or

2

understanding of what counsel is explaining to her. Counsel also heard concerns from the defendant's family member, who described the defendant's inability to accomplish the activities of daily living without assistance. Based on this information, I found reasonable cause to believe that the defendant may presently suffer from a mental disease or defect rendering her mentally incompetent to proceed to trial and granted her request for a competency evaluation. Doc. 63.

I appointed Dr. Amie Gerodimos to conduct an independent psychiatric examination of the defendant. Dr. Gerodimos is a forensic psychiatrist with Tampa General's Behavioral Health Hospital and an assistant professor of psychiatry at the University of South Florida's Morsani College of Medicine. Dr. Gerodimos provided her report on October 9, 2025. Doc. 65. At the parties' request, I scheduled an evidentiary hearing for November 14, 2025. Docs. 67-69. During that hearing, the United States moved the report into evidence with the consent of the defendant. Docs. 74, 75-1. The defendant moved unopposed to admit into evidence medical records from Premier Community Healthcare, and the defendant testified. The United States offered testimony from Dr. Gerodimos in rebuttal.

## II.   DISCUSSION

"[T]he Constitution does not permit trial of an individual who lacks mental competency." *Indiana v. Edwards*, 554 U.S. 164, 170 (2008). Under 18 U.S.C. § 4241(a), either party may at any time before sentencing move for a hearing to determine the mental competency of the defendant. A defendant lacks mental competency if the defendant "is presently suffering from a mental disease or defect

rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense[.]" 18 U.S.C. § 4241(d). This means that the defendant must have "'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and . . . a rational as well as factual understanding of the proceedings against him.'" *United States v. Dixon*, 901 F.3d 1322, 1341 (11th Cir. 2018) (quoting *United States v. Cruz*, 805 F.2d 1464, 1479 (11th Cir. 1986)). A defendant enjoys no presumption of incompetency but rather must prove incompetency by a preponderance of the evidence. *Cooper v. Oklahoma*, 517 U.S. 348, 362 (1996); *United States v. Bradley* 644 F.3d 1213, 1268 (11th Cir. 2011).

    Here, the primary evidence bearing on the defendant's competency is the report of Dr. Gerodimos, who evaluated the defendant on September 22 and 25, 2025. Doc. 65. As reported by Dr. Gerodimos, the defendant is a sixty-two-year-old female with some history of substance use and one psychiatric hospitalization. Doc. 65 at 3-5. The defendant reported intermittent symptoms of depression and anxiety, as well as vague auditory hallucinations and hearing her son's voice on falling asleep or waking up. Doc. 65 at 4. She reported no other symptoms consistent with psychosis, mania, or hypomania. Doc. 65 at 4. The defendant has a history of high blood pressure and a transient ischemic attack (aka a "TIA" or "mini stroke"). Doc. 65 at 4, Doc. 76-1 at 4. The defendant reported that she has fallen twice at home since the TIA. Doc. 65 at 4-5. She currently receives prescription medicine to mitigate her cholesterol and blood pressure, a muscle relaxer, and a sleep aid.

4

Doc. 65 at 5.

Dr. Gerodimos describes the defendant as "poorly cooperative" and as displaying "questionable effort" during her first mental status examination. Doc. 65 at 5-6. However, the defendant "had a logical, linear, and goal-directed thought process"; no evidence of paranoia, thought disorder, delusional thinking, or thoughts of harming herself or others; poor short-term memory but good long-term memory; and fair judgment. The defendant was "intermittently tearful" when speaking about the disappearance of her son and reported a depressed mood, feeling tired and exhausted, and having no energy. During her second mental status examination, the defendant was more cooperative with "a brighter display of emotions" but otherwise unchanged. Doc. 65 at 6.

Dr. Gerodimos reviewed medical records spanning September 6, 2023, to September 18, 2025, and attempted unsuccessfully to obtain additional records of mental health treatment received by the defendant. Ultimately, Dr. Gerodimos diagnosed the defendant with "major depressive disorder, first episode, moderate," which causes the defendant "clinically significant stress and impairment." Doc. 65 at 10-11. Dr. Gerodimos considered whether the defendant was malingering but concluded that the defendant's symptoms of depression were genuine. Doc. 65 at 11.

During both interviews with the defendant, Dr. Gerodimos assessed the defendant's understanding of the legal process and the charges against her. Doc. 65 at 7-9. Dr. Gerodimos assessed the defendant for malingering and found that the defendant appeared "motivated to feign deficits in her legal knowledge" and that

"her understanding of and ability to participate in the legal process may be better than what she portrayed during the evaluation." Doc. 65 at 7. Specifically, the defendant answered "I don't know" when discussing the severity of her charges despite (1) her criminal history, (2) her receiving information about those charges from Dr. Gerodimos during the evaluation, and (3) her lack of neurocognitive deficits that "would preclude her from learning and retaining the information." Doc. 65 at 11-12. The defendant "wisely deferred many questions to her defense attorney" and "made favorable decisions for herself when presented with options for plea bargaining." Doc. 65 at 11. The defendant accurately described the roles of courtroom participants and repeatedly recognized the role of her own attorney. Doc. 65 at 12.

Accordingly, Dr. Gerodimos found that the defendant (1) could appreciate the charges against her, (2) could appreciate the range and nature of possible penalties, (3) could understand the adversarial nature of the legal process, (4) could disclose to her defense attorney facts pertinent to the proceedings, (5) could manifest appropriate courtroom behavior, and (6) could testify relevantly. Doc. 65 at 12. Importantly, Dr. Gerodimos concluded that the defendant's poor effort derived not from an inability to participate but a choice not to cooperate. Doc. 65 at 12. Thus, Dr. Gerodimos opined that the defendant has sufficient present ability to understand the nature and consequences of the proceedings against her and to assist properly in her defense. Doc. 65 at 13.

The defendant does not dispute the findings and conclusions by Dr.

6

Gerodimos. Rather, the defendant contends that she suffered additional medical complications after her visits with Dr. Gerodimos and supports those claims with her testimony and with records from Premier Community Healthcare. The defendant testified that she had a second stroke but was unable to say when that stroke occurred. She testified that both strokes impaired her ability to remember. She testified that her medication causes drowsiness and impacts her ability to drive. However, the defendant also testified that she had been able to discuss with her attorney possible defenses to the charges against her.

The medical records show that the defendant complained of having a stroke in September 2025. Doc. 76-1 at 4. However, the patient medical history shows a TIA in March 2025, and an emergency room visit on October 2, 2025, with no report of a stroke from the October 2 visit. Doc. 76-1 at 4, 21. The records appear to show another emergency room visit on October 17, 2025, after the defendant's primary care physician diagnosed her with a "hypertensive emergency" based on her blood pressure. Doc. 76-1 at 12. The remaining records pre-date the defendant's evaluation with Dr. Gerodimos. Doc. 76-1 at 16-37.

Dr. Gerodimos testified that she reviewed the Premier Community Healthcare records and that those records had no impact on her opinion of the defendant's competency. She further testified that she listened the defendant's testimony at the hearing and nothing in the form or substance of that testimony changed her opinion. She testified further about her assessment that the defendant was exaggerating the deficits in her legal knowledge. According to Dr. Gerodimos, the defendant scored

abnormally low—lower than severely mentally ill populations—on the Inventory of Legal Knowledge test.[1] Although Dr. Gerodimos could not identify why the defendant was exaggerating her deficits, Dr. Gerodimos testified that the test results together with the defendant's poor effort and lack of cooperation supported her conclusion that the defendant's legal knowledge is greater than exhibited.

The uncontested findings and conclusions in Dr. Gerodimos's report, together with her testimony, are both thorough and persuasive. Although the defendant claims to have experienced another stroke, the defendant failed to establish through either her testimony or her medical records that an intervening event affecting her competency has occurred. The defendant is presumed competent absent a preponderance of evidence showing otherwise, and the defendant provided neither Dr. Gerdimos nor this Court sufficient evidence to satisfy her burden. Based on Dr. Gerodimos's opinion, as well as the defendant's failure to present evidence undermining that opinion, I recommend finding that the defendant is competent to stand trial and is not presently suffering from a mental disease or defect rendering her mentally incompetent to the extent that she is unable to understand the nature and consequences of the proceedings against her or to assist properly in her defense. 18 U.S.C. § 4241(d).

---

[1] According to Dr. Gerodimos, this is a psychological test that asks a series of legal questions. The test taker must pick one of two answers. If a person intentionally feigns a deficit, that person tends to score lower than they would by chance.

REPORTED in Tampa, Florida on this 18th day of November, 2025.

_____
LINDSAY S. GRIFFIN
United States Magistrate Judge

### NOTICE TO PARTIES

A party has fourteen days from the day of service of this report either to file written objections to the proposed findings and recommendation or to seek an extension of the fourteen-day deadline. 28 U.S.C. § 636(b)(1)(C). Under Eleventh Circuit Rule 3-1, a party failing to object to a magistrate judge's findings or recommendations "waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1). If the parties want to expedite the resolution of this matter, they may promptly file a joint notice of no objection.